UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

CRAIG F. BROWN,                )
                               )
            Plaintiff          )
                               )
      vs.                      )    CAUSE NO. 4:13-CV-71 RM
                               )
THOMAS BUSCH, et al.,          )
                               )
            Defendants         )

OPINION and ORDER

This cause is before the court on a petition to proceed *in forma pauperis* on an amended complaint filed by *pro se* plaintiff Craig Brown. Before granting an *in forma pauperis* petition, the court must decide whether the petitioner is able to pay the filing fee. 28 U.S.C. § 1915(a)(1). Mr. Brown has filed an affidavit in which he represents that he is currently unemployed, is no longer receiving unemployment compensation, and doesn't have the funds needed to pay the filing fee. Before the complaint is served on the defendants, however, the court must screen the complaint and dismiss it if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); Denton v. Hernandez, 504 U.S. 25, 34 (1992); Hardimon v. United States, No. 11-cv-383, 2011 WL 2693345, at *1 (S.D. Ill. July 12, 2011).

To survive dismissal, a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v.

Twombly, 550 U.S. 561, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While a complaint filed by a *pro se* plaintiff like Mr. Brown must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (*quoting* Estelle v. Gamble, 429 U.S. 97, 106 (1976)), Mr. Brown "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to [him] that *might* be redressed by the law." Swanson v. Citibank, N.A., 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

Most of Mr. Brown's claims relate to his dissolution of marriage and related custody proceedings in the Tippecanoe County, Indiana, Superior Court. In his amended complaint, entitled "Damages for Egregious Civil Rights Violations 42 U.S.C. § 1983," Mr. Brown alleges that the thirty-seven named defendants violated "his constitutional rights and thus by definition have committed 'Treason' and have consequently 'Declared War on the American Public' with absolute impunity all the way up to the Indiana Supreme Court for the past 6 years by which they have made an absolute mockery of plaintiff's civil rights, most notably plaintiff's inalienable Right to Parent his Daughter free from State Interference absent State Required 'Compelling Reason or Cause' of which no one but no one has ever even attempted to produce one single shred of evidence!" Amd. Compl., at 3. Mr. Brown

adds that he "fully expects that for every reference to a State Law, there will be a Federal Law equivalent law that has been similarly violated by one or more defendant." Amd. Compl., at 3.

Mr. Brown's prayer for relief seeks exclusive custody of his daughter for the next six years without interference from the state or his ex-wife; monetary relief from all the defendants at $1,000 per minute, retroactive to his ex-wife's initiation of dissolution proceedings on April 28, 2008; monetary relief from the state court judges and the State of Indiana at the rate of $5,000 per minute for all the time he should have been able to spend with his daughter; financial reimbursement from his ex-wife for his having had to attend "parenting classes" and take part in "professionally supervised visits" with his daughter; an order that the state court judges post a bond in the amount of "$30,000 per $1,000,000 they handle" or pay twice that amount if they don't have a bond; reimbursement for the time he has spent on this case at a rate of $100 per hour for 40 hour weeks, plus time-and-a-half for time over 40 hours, from April 28, 2008 through the present; return of all child support moneys he has paid to the State of Indiana, with additional damages from the State in the amount of the child support he has paid; payment at $1,000 per day for each day his driver's license was suspended; and "additional unspecified damages [to] be added to this case as appropriate," Amd. Compl., at 11-13.

## Claims against Individual Defendants

Mr. Brown sues the following individual defendants:

– Rebekah Sanders, his ex-wife, for fraud and child abuse resulting from her initiating dissolution proceedings containing false information, stealing marital assets, minimizing his parenting time with his daughter, and alienating him from his daughter, Amd. Compl., ¶ 2;

– Jerry and Arlene Sanders, Mr. Brown's ex-wife's parents, asking that they be charged with fraud and child abuse for helping his ex-wife hide marital assets to which he was entitled and gain custody of his daughter, Amd. Compl., ¶¶ 3, 4;

– Karen Cooper, his ex-wife's sister, who is alleged to have written a letter to a judge defaming Mr. Brown in order to influence the judge to rule in her sister's favor, Amd. Compl., ¶ 5;

– Aimee Sayers, another sister of his ex-wife, who Mr. Brown says "has constantly professed disdain" for him and, as babysitter for his daughter, has worked to alienate his daughter from him, Amd. Compl., ¶ 6;

– Lezlie Tiarks, a friend of his ex-wife, who he alleges showed disdain for him and colluded with his ex-wife to alienate his daughter from him by exchanging e-mails "jokingly making obscure references to 'Earl' [while at the same time] Rebekah [Sanders] was making references to the effect of doing horrible things to plaintiff, even if only imagined." Amd. Compl., ¶ 7;

– Marcel Katz, Mr. Brown's first attorney in the state court dissolution/custody proceedings, who Mr. Brown says colluded with Rebekah Sanders by "fraudulently submitting false statements for the purpose of violating

4

plaintiff's constitutional rights by influencing Judge Busch in obtaining a ruling on [Rebekah] Sanders' favor," Amd. Compl., ¶ 11;

– Charles Deible, another attorney who represented Mr. Brown in the state court dissolution/custody proceedings, who Mr. Brown alleges "committed perjury and fraud in his treacherous traitorous perjurious and collusional misrepresentation of plaintiff" and colluded with Rebekah Sanders and her counsel "in direct violation of plaintiff's and minor daughter's constitutional rights, as evidenced by Deible's abandonment of his motion," Amd. Compl., ¶ 14;

– Ladonna Sorenson, Rod Ray, and E. Kent Moore, attorneys who were somehow involved in Mr. Brown's state court dissolution/custody proceedings, are also named as defendants who, Mr. Brown claims, "all did their part in sitting on their hands" while violating his "5th and 14th Amendments concerning his daughter throughout which period of time [Rebekah] Sanders was refusing to let plaintiff see his daughter . . . and by their inactions perpetrated said fraud which was being committed against plaintiff and/or directly defrauded plaintiff themselves," Amd. Compl., ¶ 13;

– Andrew Bloch, another attorney who was somehow involved in Mr. Brown's state court dissolution/custody proceedings, is alleged to have "falsified evidence (with his office copier set to the max dark setting, he copied and re-copied a submission by plaintiff until it was unreadable) by which he then accused plaintiff of submitting an unreadable document;" acted "in collusion with [Rebekah] Sanders" by submitting false information that led to plaintiff's

5

incarceration; and "played tag team" with Judge Meade during a hearing in state court proceedings. Mr. Brown concludes that "[a] thorough investigation of the recorded hearing will likely lead to a few hundred more violations." Amd. Compl., ¶ 12.

To the extent Mr. Brown is attempting to raise claims relating to actions or inactions of these defendants in connection with the proceedings or the judgment in his dissolution of marriage/child custody case in the Tippecanoe Superior Court, those claims are barred by the Rooker-Feldman doctrine[1], which holds that federal district courts lack jurisdiction over lawsuits "'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments.'" Lance v. Dennis, 546 U.S. 459, 464 (2006) (*quoting* Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). The Rooker-Feldman doctrine also provides that federal courts don't have subject matter jurisdiction over claims that are "inextricably intertwined" with the state court judgment. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983). Because Mr. Brown's claims of allegedly improper conduct by these defendants relate to the state court dissolution/custody proceedings, he is barred from raising those claims in this court.

---

[1] *See* Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

To the extent Mr. Brown alleges that the actions or inactions of these defendants don't relate to the state court dissolution/custody case, he hasn't stated a claim upon which relief can be granted. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the deprivation was undertaken by a person acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). To state a claim based on a conspiracy theory under Section 1983, a plaintiff must allege that a private individual and a state actor reached an understanding to deprive the plaintiff of his constitutional rights and that the individual was a willing participant in joint activity with the State or its agent. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970). Mr. Brown hasn't alleged that any of these defendants acted under color of state law or that any defendant reached an understanding and willingly participated with a state actor to deprive him of his constitutional rights. *See* Evers v. Reak, 21 Fed. App'x 447, 450 (7th Cir. 2001) ("Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden; a complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds" to violate the plaintiff's constitutional rights); Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."); Davis v. Union Nat. Bank, 46 F.3d 24, 25 (7th Cir. 1994) ("To state a § 1983 claim against a private actor, plaintiffs must show that the

defendant invoked state authority in such a way that the defendant should be considered a state actor."). Private persons may be sued under § 1983 when they act under color of state law, but they may not be sued for merely private conduct, no matter how discriminatory or wrongful, London v. RBS Citizens, N.A., 600 F.3d 742, 746 (7th Cir. 2010), and attorneys, "[w]hether privately retained or appointed by a court, . . . do not act under color of law merely by representing their clients." Hefley v. Bruch, 276 Fed. App'x 506, 507 (7th Cir. 2008). Mr. Brown's vague reference to a violation of his "5th and 14th Amendments concerning his daughter" is insufficient to "plausibly suggest" a right to relief under Section 1983 or fairly put the defendants on notice of the claims against them. EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007).

Mr. Brown's claims against Rebekah Sanders, Jerry Sanders, Arlene Sanders, Karen Cooper, Aimee Sayers, Lezlie Tiarks, Marcel Katz, Charles Deible, Ladonna Sorenson, Rod Ray, E. Kent Moore, and Andrew Bloch must be dismissed for failure to state a claim upon which relief can be granted.

## Claims against Court Defendants

Mr. Brown's allegations against Thomas Busch and Les Meade, judges who were involved in Mr. Brown's state court dissolution/custody case, relate to decisions those judges made in the state court proceedings. Mr. Brown alleges that Judge Busch violated his right to constitutionally protected parenting time and violated the judicial oath of office, so Judge Busch "willingly forfeited his

8

anticipated future claims to have 'judicial immunity' for his wrongdoings." Amd. Compl., ¶ 8. Mr. Brown alleges that Judge Meade, the second judge assigned to Mr. Brown's state court case, engaged in the same actions as those alleged against Judge Busch, as well as imprisoning Mr. Brown "under the premise of 'contempt' . . . as a direct consequence of plaintiff exercising his and his minor daughter's constitutional right to pursue life, liberty and happiness," illegally withholding Mr. Brown's court ordered visitation, and failing to "wipe the (supposed) back child support clean." Amd. Compl., ¶ 9.

Mr. Brown's claims against Judge Busch and Judge Meade are claims against state court judges for decisions made in state court proceedings. Contrary to Mr. Brown's assertion, judges performing judicial functions have absolute immunity against parties complaining about their alleged judicial misconduct. Loubser v. Thacker, 440 F.3d 439, 442 (7th Cir. 2006) In addition, under the Rooker-Feldman doctrine, this court has no authority to review previously entered state court orders or reverse the state court judgment from which the claims arise. Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642, 645 (7th Cir. 2011). "[N]o matter how erroneous or unconstitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it." Brown v. Bowman, 668 F.3d 437, 442 (7th Cir. 2012). If a state judge errs, "a party's remedy is through the appellate process," not through a suit against the judge. Dawson v. Newman, 419 F.3d 656, 661 (7th Cir. 2005). Mr. Brown has stated no actionable claim for relief against Judge Busch or Judge Meade.

Mr. Brown sues Carrie Ingram, an administrative law judge who, he says, had no territorial or personal jurisdiction over him – "not to even mention that her involvement is a complete and total farce in the first place" – and lacked impartiality in ruling that his driver's license would be suspended. Amd. Compl., ¶ 20. As with Judges Busch and Meade, ALJ Ingram's decision to suspend Mr. Brown's driver's license was an action taken in her judicial capacity for which she is entitled to absolute immunity. *See* Brokaw v. Mercer County, 235 F.3d 1000, 1015 (7th Cir. 2000) ("a judge will not be deprived of immunity even if the action was in error, was done maliciously, was in excess of his authority, and even if his exercise of authority is flawed by the commission of grave procedural errors").

Mr. Brown also sues Karen Beard and Jennifer Prange, court reporters for the Tippecanoe County court who were involved in Mr. Brown's state court dissolution/custody proceedings. Mr. Brown alleges that Ms. Beard and Ms. Prange denied him access to their audio recordings of hearings in the state court proceedings, which he claims "is in fact a cover up;" charged him for transcripts he claims contain discrepancies between what he believes was said and what the reporters certified as having been said at the various hearings; and refused to let him "electronically scan [his] court file as is permitted by the Freedom of Information Act and the Open Records Act." Amd. Compl., ¶ 10.

"Certainly, there is no constitutional right to an absolutely and totally accurate transcript." Loubser v. Pala, 497 F. Supp. 2d 934, 940 (N.D. Ind. 2007); *see also* Cooney v. Casady, Nos. 10-3842 & 11-1757, 2013 WL 4406668, at *5 (7th

Cir. Aug. 19, 2013) ("[T]he alleged discrepancies in the transcripts suggest at most negligence, on which § 1983 claims cannot be founded."). "A plaintiff states a claim for a violation of his constitutional rights only if the 'inaccuracies in the transcript adversely affected the outcome' of the proceeding." Cherry v. Record Transcript, Inc., No. 2008 WL 1777745, at *2 (M.D. Fla. Apr. 18, 2008) (*quoting* Tedford v. Hepting, 990 F.2d 745, 747 (3d Cir. 1993)). Mr. Brown hasn't alleged any facts describing how any inaccuracies in the transcript(s) prejudiced him – that he was required to pay for a transcript doesn't support a claim under Section 1983. Mr. Brown's summary allegation that the court reporters' refusal to permit him to access their audio recordings was "a cover-up" isn't accompanied by any facts that would suggest a plausible basis for relief nor does it "give the defendant[s] fair notice of what [his] claim is and the grounds upon which it rests." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007). The allegations of Mr. Brown's amended complaint are insufficient to state a claim under Section 1983 against Ms. Beard or Ms. Prange.

Claims against the Tippecanoe County Courthouse,
the United States Senate/Congress, and
the Indiana State Senate/Legislature

Mr. Brown alleges that actions of the Tippecanoe County Courthouse, the United States Senate/Congress, and the Indiana Senate/Legislature relating to federal matching funds, incentive payments to states, Indiana's distribution of Title IV-D federal matching funds, and "financial incentives" provided to judges

allowed the named judges "to destroy childrens' lives by sticking them with the least fit parent . . . while the 'highest earning' parent can (usually) be ordered to pay a much higher child support amount." Mr. Brown alleges, too, that the State of Indiana sanctioned his ex-wife's "kidnaping" of his daughter and "then unconstitutionally ordered plaintiff to underwrite said kidnaping." Mr. Brown "demands that all of these unconstitutional laws and amendments be overturned retroactively and all of the billions stolen from American citizens' Social Security Retirement Fund over the past forty years be repaid in full with interest by each of the 50+ states/territories on the grounds that this law has done nothing short of (for the most part) motivate greedy old men to refuse to order the only constitutional acceptable 50/50 custody." Amd. Compl., ¶ 15.

As a sovereign, the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Testan, 424 U.S. 392, 399 (1976). Sovereign immunity can't be avoided by suing individual agencies or branches of the United States government, such as the United States Senate and the United States Congress. *See* Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) ("The Supreme Court has held that '[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity.'" (*quoting* Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). "Plaintiffs suing the United States must allege an unequivocal waiver of sovereign immunity. . . . Such waivers may not be implied, and must be strictly construed in favor of the sovereign." Lanier-Finn v.

Department of the Army, No. 12-cv-3658, 2013 WL 4535847, at *3 (D.Md. Aug. 26, 2013) (internal quotation and citation omitted). Because Mr. Brown hasn't alleged that the United States has consented to be sued, he hasn't stated a claim against the United States Senate/Congress.

Congress didn't intend for Section 1983 to disturb states' Eleventh Amendment immunity, so states and state entities, like the Tippecanoe County Courthouse, the Indiana State Senate, and the Indiana Legislature, are not "persons" liable for damages under the statute. Will v. Michigan Dep't of State Police, 491 U.S. 58, 63 (1989); Thomas v. Illinois, 697 F.3d 612, 613 (7th Cir. 2012); Westbrook v. Indiana, No. 3:10-CV-526, 2011 WL 4361571, at *2 (N.D. Ind. Aug. 11, 2011). The Indiana General Assembly, composed of the Senate and the House of Representatives, is the exclusive unit of the Legislative branch of the State of Indiana and so is not a "person" for purposes of Section 1983. IND. CONST. ART. 4. In addition, the Indiana Tort Claims Act affords governmental entities and employees immunity from liability for any loss relating to "the adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations)." IND. CODE § 34.13-3-3(8)(A). Mr. Brown hasn't stated a claim against these state entities.

### Claims against Newton County Sheriff(s) and a Tippecanoe County Sheriff's Deputy

Mr. Brown alleges that unidentified Newton County Sheriffs acquiesced with his ex-wife and her family to deny him parenting time with his daughter. He claims the Newton County Sheriffs "shirked their responsibility to uphold the law" and "perpetrated this fraud and child abuse." Amd. Compl., ¶ 16. Mr. Brown sues an unnamed female deputy officer who, he alleges, "'magically' appeared in the back of [Judge] Meade's courtroom (aka 'prearranged') at the last minute to take plaintiff into custody" based on Judge Meade's "void order." Mr. Brown alleges that the deputy's actions were in "direct violation" of the Sheriff's sworn "oath of office to uphold plaintiff's constitutional rights" and that the "collective collusion, fraud, and child abuse was already approved at the highest level in the Tippecanoe County Sheriff's department." Amd. Compl., ¶ 17.

The existence of a constitutional right is the first element of any § 1983 claim. Padula v. Leimbach, 656 F.3d 595, 600 (7th Cir. 2011). Mr. Brown hasn't alleged a constitutional violation by any of these defendants. Even though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Mr. Brown hasn't set forth factual allegations sufficient to permit the court or the defendants to determine what acts or omissions allegedly occurred. Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). Mr. Brown hasn't stated a claim upon which relief can be granted as to the Newton County Sheriff(s) and the Tippecanoe County Sheriff's Deputy.

Claims against "All Other Jail Staff present throughout his incarceration"

Mr. Brown alleges that his civil rights were violated by "all other jail staff present throughout his incarceration" when he was strip searched, his picture taken during processing, and his picture was taken via video while he was in his cell, all without his permission. He seeks damages from "the jail facility itself, a 'for profit' entity, since the facility was negligent in keeping plaintiff there at all." Amd. Compl., ¶¶ 18-19.

Body cavity searches by jail personnel are "reasonable" because they are prudent precautions against smuggling drugs and other contraband into prison, Bell v. Wolfish, 441 U.S. 520, 558-560 (1979), and the Supreme Court has refused to "recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). Prisoners are protected by the Eighth Amendment's prohibition against punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering," Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003), but Mr. Brown's complaint has no such allegations. Mr. Brown's conclusory allegations that the search and surveillance practices of unnamed jail officers at an unnamed jail facility violated his right to privacy state no claim upon which relief can be granted.

Claims against Linda L. Kampe-Houtz

15

Mr. Brown alleges that in Linda Kampe-Houtz's role as guardian ad litem, she maliciously attacked his character, gave false testimony, and colluded with his ex-wife and others to deprive him of his "constitutionally protected rights to parent his daughter." Amd. Compl., ¶ 21. As already discussed, to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the deprivation was undertaken by a person acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Mr. Brown hasn't alleged that Ms. Kampe-Houtz was acting under color of state law, and his allegation that she colluded with other private individuals is insufficient to state a claim under Section 1983. *See* Evers v. Reak, 21 Fed. App'x 447, 450 (7th Cir. 2001) ("Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden; a complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds" to violate the plaintiff's constitutional rights). Mr. Brown's allegations against Linda Kampe-Houtz are insufficient to state a claim upon which relief can be granted.

Claims against Pat Harrington

Mr. Brown sues Pat Harrington, a Tippecanoe County Prosecutor, who, Mr. Brown claims, denied him his "federal and state constitutional right to have equal protection under the law" by ignoring all of Mr. Brown's requests to have his ex-wife criminally prosecuted and refusing his requests for public records. Mr. Brown

alleges that the fact that the prosecutor's office "gets 33.4%" of child support dollars is "proof of a further case of collusion." Amd. Compl., ¶ 22.

Mr. Brown alleges that his equal protection rights were violated, but he hasn't alleged that he is a member of a protected class, that he was treated differently than persons outside the protected class, or that Mr. Harrington's actions "stemmed from a discriminatory motive." Rihm v. Hancock County Public Library, No. 2013 WL 3155491, at *7 (S.D. Ind. June 20, 2013); YHWHnewBN v. Leak, No. 11 C 5653, 2012 WL 5936285, at *2 (N.D. Ill. Nov. 27, 2012). "[T]he decision to prosecute is solely within the discretion of the prosecutor," Leeke v. Timmerman, 454 U.S. 83, 87 (1981), and a private citizen, like Mr. Brown, "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Mr. Brown's allegations against Mr. Harrington fail to state a claim. *See* Angie's List, Inc. v. Ameritech Pub., Inc., No. 1:07–cv–1630, 2010 WL 2521722, at *2 n.2 (S.D. Ind. June 15, 2010) ("The allegations of a complaint must contain enough factual matter to plausibly suggest that each element of the claimed cause of action actually exists, not that the element's existence is possible, conceivable, or that facts exist that are merely consistent with the element's existence.").

Claims against the Indiana Attorney General
and the State of Indiana

Lastly, Mr. Brown alleges that the Indiana Attorney General, along with the State of Indiana, is responsible for "the actions, inactions and individual and collective atrocity of the judges it employs." Amd. Compl., ¶ 23. The State of Indiana isn't a proper defendant given its immunity under the Eleventh Amendment, and the only theory of liability for the state would be *respondeat superior*, which is not permissible in an action brought under § 1983. Smith v. Gomez, 550 F.3d 613, 618 (7th Cir. 2008). Mr. Brown hasn't stated a viable claim against the State of Indiana or Indiana's Attorney General.

## Conclusion

Based on the foregoing, the court GRANTS Mr. Brown's petition to proceed *in forma pauperis* and DISMISSES his amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

SO ORDERED.

ENTERED:   November 26, 2013

/s/ Robert L. Miller, Jr.
Judge, United States District Court